```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/14/2022
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
KLAUBER BROTHERS, INC.                            :
                                                  :
                                    Plaintiff,    :
                                                  :                1:21-cv-4526-GHW
                   -against-                       :
                                                  :           MEMORANDUM OPINION
URBN US RETAIL LLC,                               :                AND ORDER
ANTHROPOLOGIE (DELAWARE), INC.,                   :
BHLDN.COM LLC,                                    :
URBAN OUTFITTERS, INC., and                       :
DOES 1 through 10                                 :
                                                  :
                                    Defendants.   :
                                                  :
----------------------------------------------------------------X

GREGORY H. WOODS, United States District Judge:

## I.   INTRODUCTION

Plaintiff Klauber Brothers, Inc. ("Plaintiff") alleges that Defendants Urban Outfitters, Inc.,

Anthropologie, Inc., BHLD.COM LLC, and URBN US Retail LLC created, manufactured, and sold

two dress styles—the "Fleur" and "Nouvelle Fleur" dresses—with lace straps bearing patterns

copied from one of Plaintiff's lace designs.  Based on that alleged conduct, Plaintiff filed this lawsuit,

asserting that Urban Outfitters, Anthropologie, BHLD, URBN US Retail LLC, and a number of

unnamed defendants (together, "Defendants") violated the Copyright Act of 1976, Title 17 U.S.C.,

§ 101 *et seq.*

Defendants moved to dismiss the complaint under Rule 12(b)(6) for failure to state a claim.

The Court concludes that the lace on the Nouvelle Fleur dresses is both substantially similar and

strikingly similar to Plaintiff's copyrighted design, such that Plaintiff has sufficiently pleaded a claim

for infringement with respect to the Novelle Fleur dresses.  Plaintiff does not, however, adequately

plead that the lace on the Fleur dresses infringed on Plaintiff's copyright.  Accordingly, Defendant's motion to dismiss is GRANTED in part and DENIED in part.

## I.  BACKGOUND

### A.  Facts[1]

Plaintiff is a lace company based in New York.  FAC ¶¶ 4–5.  Among Plaintiff's lace designs are two designs that Plaintiff calls Design 3885 and Design 3886.  *Id.* ¶¶ 13, 15.  Plaintiff owns a copyright registration covering Design 3886, but not one covering Design 3885.  *See id.* ¶¶ 13–15.





*Design 3885*[2]                                     *Design 3886*

Beginning in 2008, Plaintiff "sampled and sold over 150,052 yards of lace bearing [Design 3886] and its related patterns . . . to numerous parties in the retail and apparel industries."  *Id.* ¶ 15.

---

[1] Unless otherwise noted, the facts are taken from the first amended complaint and are accepted as true for the purposes of this motion.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
[2] All images in this opinion are copied from Plaintiff's first amended complaint.

In or around September 2013, Plaintiff sent Urban Outfitters samples of "at least 87" of its designs. *Id.* ¶ 17.  Those samples included two samples of Design 3885, but none of Design 3886.  *Id.*; *see also id.* Ex. 1, at 3.



*Nouvelle Fleur dress 50778935*



*Fleur dress 48378558*

BHLDN sold six items online (style numbers 50779214, 50778935, 50779495, 50778934, 50779354, and 50779073; collectively, the "Nouvelle Fleur dresses") that Plaintiff alleges "incorporat[ed] fabric that bears artwork identical to or substantially similar to [Design 3886]."[3]  *Id.* ¶ 19.  Likewise, Anthropologie sold six items online (style numbers 48378558, 45101847, 35734615,

---

[3] The amended complaint does not describe the relationship between Defendants, see FAC ¶¶ 6–9, but the parties describe their relationship in identical terms, which the Court recites here as context for the reader.  *See* Opp'n at 1; Reply at 1.  Defendant Urban Outfitters, Inc., is the corporate parent of defendant URBN US Retail LLC, which is in turn the successor-in-interest to defendant Anthropologie, Inc. and defendant BHLDN.com LLC.  *See* Opp'n at 1; Reply at 1.

36526663, 33892415, and 36081792; collectively, the "Fleur dresses") that allegedly bore designs similar to Design 3886. *Id.*¶ 19.

### B.     Procedural History

Plaintiff filed the initial complaint in this action on May 19, 2021. *See* Dkt. No. 1. Defendants moved to dismiss the initial complaint on August 13, 2021. *See* Dkt. No. 30. Rather than oppose that motion, Plaintiff filed an amended complaint on September 7, 2021. *See* First Amended Compl. ("FAC"), Dkt. No. 40. That amended complaint remains the operative complaint in this action.

Defendants filed a motion to dismiss the first amended complaint under Rule 12(b)(6) and a memorandum of law in support of that motion on November 5, 2021. *See* Mot. to Dismiss, Dkt. No. 50; Defs.' Mem. in Supp. ("Mot."), Dkt. No. 51. Plaintiff filed a memorandum of law in opposition to the motion to dismiss on December 3, 2021. *See* Pl.'s Opp'n ("Opp'n"), Dkt. No. 54. Defendants filed a reply in support of the motion to dismiss on December 17, 2021. *See* Defs.' Reply ("Reply"), Dkt. No. 56.

Defendants also filed a request for judicial notice of certain "public-domain" lace designs on November 5, 2021. *See* Defs.' Req. for Judicial Notice, Dkt. No. 52. Plaintiff filed a response to that request on December 3, 2021. *See* Pl.'s Resp. to Req. for Judicial Notice, Dkt. No. 55. Defendants filed a reply in support of the request on December 17, 2021. *See* Defs.' Reply in Supp. of Req. for Judicial Notice, Dkt. No. 57.

## II.    LEGAL STANDARD

A complaint need only contain "a short and plain statement . . . showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a claim that does not meet this pleading standard for "failure to state a claim upon which relief can be granted." Fed. R.

Civ. P. 12(b)(6).  On a motion filed under Rule 12(b)(6), the court accepts as true the facts alleged in the complaint and draws all reasonable inferences in the plaintiff's favor.  *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam).  But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are inadequate.  *Iqbal*, 556 U.S. at 678 (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  And "[t]he tenet that a court must accept as true" a complaint's factual allegations does not apply "to legal conclusions." *Iqbal*, 556 U.S. at 678 (alterations omitted).

To survive dismissal, a complaint must allege sufficient facts to state a plausible claim. *Twombly*, 550 U.S. at 570.  A claim is plausible when the plaintiff pleads facts to support the reasonable inference that the defendant has acted unlawfully.  *Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 556).  The plaintiff's claim must be more than merely "speculative." *Twombly*, 550 U.S. at 545.  And a reviewing court must "draw on its judicial experience and common sense" to determine plausibility.  *Iqbal*, 556 U.S. at 679 (citation omitted).

On a motion to dismiss, a court must generally "limit itself to the facts stated in the complaint." *Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167, 192 (2d Cir. 2006) (quoting *Hayden v. County of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999)).  "Generally, [courts] do not look beyond 'facts stated on the face of the complaint, . . . documents appended to the complaint or incorporated in the complaint by reference, and . . . matters of which judicial notice may be taken.'" *Goel v. Bunge, Ltd.,* 820 F.3d 554, 559 (2d Cir. 2016) (quoting *Concord Assocs., L.P. v. Entm't Props. Tr.*, 817 F.3d 46, 51 n. 2 (2d Cir. 2016)).  A court may consider "any 'written instrument' . . . attached to [the complaint] as 'an exhibit' or . . . incorporated in it by reference."  *Lynch v. City of New York*, 952 F.3d 67, 79 (2d Cir. 2020) (quoting Fed. R. Civ. P. 10(c) (other citations omitted)).  A court may also consider a document "solely relie[d]" on by the plaintiff if it "is integral to the complaint."  *Id.* (quotation and brackets omitted).  A document is "integral to the complaint" if the complaint "relies

heavily" on the document's "terms and effect." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016).

A.      **Defendants' Motion for Judicial Notice**

The Court will not take judicial notice of Exhibits A and B to Defendant's request for judicial notice, which feature photos of lace samples that appeared as parts of exhibits at the SFO Museum and the Metropolitan Museum of Art.  A court may take judicial notice of a fact that is "not subject to reasonable dispute" either because it is "generally known within the trial court's territorial jurisdiction" or because it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  Courts have taken judicial notice of "materials in the public record, such as federal copyright registrations, newspaper articles, and regulatory filings—all for the limited purpose of noting what the documents state, rather than to 'prove the truth of their contents.'"  *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 462 (S.D.N.Y. 2020) (quoting *Ace Arts, LLC v. Sony/ATV Music Pub., LLC*, 56 F. Supp. 3d 436 (S.D.N.Y. 2014)).

The Court declines to take judicial notice of those exhibits.[4]  As an initial matter, Defendants argue that "[j]udicial notice is appropriate because these exhibits reflect the historical and common nature of certain lace designs and their elements." Dkt. No. 32 at 2.  In effect, Defendants do not simply request that the Court take judicial notice of the exhibits and consider those exhibits in deciding Defendants' motion to dismiss, but they instead request that the Court take judicial notice of the fact that the lace featured in the exhibits showcases historical and common lace designs and design elements.  *See id*, *see also id.* at 3–4 (arguing that the Court may take judicial notice of generic design elements).

---

[4] Exhibit A includes photos of lace samples that appeared *Lace: A Sumptuous History*, an exhibit that was curated by the SFO Museum, and Exhibit B features an image of a lace scarf from the late 1800s that was exhibited in the New York Metropolitan Museum of Art.  *See* Dkt. Nos. 52-1, 52-2.

However, it is not generally known within the trial court's territorial jurisdiction that the photos showcase common or historical lace designs or design elements, nor can that fact be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.[5] The two exhibits feature fourteen photos of different lace designs, twelve of which are not accompanied by a significant description.  It cannot be readily determined that those designs are representative of common lace designs or design elements—indeed, the exhibits are most readily understood as merely showing fourteen specific, discrete lace samples.  Thus, the Court cannot accurately or readily determine that those photos are, in fact, representations of common or historical lace designs or design elements.

Further, the contents of the exhibits are subject to reasonable dispute.  As Plaintiff points out, "the designs referenced are presumably all different and it is unknown as to what elements are original and when these designs were created and by whom."  Dkt. No. 55 at 2.  The Court agrees: the photos in Exhibits A and B lack descriptions or other indications to demonstrate that they indisputably showcase commonplace design elements.  Thus, the Court declines to take judicial notice of the fact that Exhibits A and B showcase historic or commonplace design elements.

Defendants do not successfully argue judicial notice is appropriate here.  Defendants are correct that "[c]ourts in copyright infringement cases may take judicial notice of 'the generic elements of creative works.'"  *King Zak Indus., Inc. v. Toys 4 U USA Corp.,* No. 16-CV-9676 (CS), 2017 WL 6210856, at *3 (S.D.N.Y. Dec. 8, 2017) (quoting *Effie Film, LLC v. Pomerance*, 909 F. Supp. 2d 273, 300 (S.D.N.Y. 2012)).  Under that principle, courts in this district have taken judicial notice of "the fact that as associated with Chanukah, a menorah is a nine-branched candelabrum—with one larger or higher candle in the center, and four on each side," *see King Zak*, 2017 WL 6210856, at

---

[5] New Yorkers are sophisticated about fashion, but the Court does not believe that the history and design of lace patterns are generally known even here.

*3, and the fact that "that members of the New York Police Department are often portrayed as Irish, smokers, drinkers, and third or fourth generation police officers," *Walker v. Time Life Films, Inc.*, 615 F. Supp. 430, 438 (S.D.N.Y. 1985) *aff'd*, 784 F.2d 44 (2d Cir. 1986).

Here, however, Defendants have not requested that the Court take judicial notice of generic design elements. Instead, as discussed, Defendants ask that the Court take judicial notice of the specific photos featuring the specific lace designs that appear in Exhibits A and B. For the reasons explained above, the Court declines to do so. *Cf. L.A. Printex Indus., Inc. v. Forever 21, Inc.*, No. CV 09-3382 SVW (CWX), 2009 WL 10698834, at *6 (C.D. Cal. Oct. 27, 2009) (taking judicial notice of the fact that "the anchor symbol is common in fabric design," but declining to take judicial notice of image search results of patterns featuring anchor symbols). Accordingly, Defendants' motion for judicial notice is denied.

## III.   DISCUSSION

Plaintiff has adequately alleged that the protected elements of Design 3886 are substantially similar to the lace on Defendants' Nouvelle Fleur dresses, but not the lace on Defendants' Fleur dresses. "To state a claim for copyright infringement, a plaintiff must allege 'both (1) ownership of a valid copyright and (2) infringement of the copyright by the defendant.'" *Spinelli v. Nat'l Football League*, 903 F.3d 185, 197 (2d Cir. 2018) (quoting *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 109 (2d Cir. 2001)). There is "a statutory presumption" that a copyright is valid when it has been registered in the United States Register of Copyright. *Yurman*, 262 F.3d at 109; *see also* 17 U.S.C. § 410(c) ("In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute *prima facie* evidence of the validity of the copyright . . . ."). In this case, Defendants do not dispute Plaintiff's allegation that it owns a valid copyright registration for Design 3886.

"To satisfy the second element, a plaintiff 'must demonstrate that:  (1) the defendant has actually copied the plaintiff's work; *and* (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's [work].'" *Abdin v. CBS Broad. Inc.*, 971 F.3d 57, 66 (2d Cir. 2020) (emphasis in original) (quoting *Yurman*, 262 F.3d at 110).

For the first requirement, "[a]ctual copying may be established by direct or indirect evidence." *Boisson v. Banian, Ltd.*, 273 F.3d 262, 267 (2d Cir. 2001).  "Because direct evidence of copying is seldom available, a plaintiff may establish copying circumstantially 'by demonstrating that the person who composed the defendant's work had access to the copyrighted material' and that there are similarities between the two works that are 'probative of copying.'" *Jorgensen v. Epic/Sony Recs.*, 351 F.3d 46, 51 (2d Cir. 2003) (first quoting *Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1249 (11th Cir. 1999); and then quoting *Repp v. Webber*, 132 F.3d 882, 889 (2d Cir. 1997)).  "Access must be more than a bare possibility and may not be inferred through speculation or conjecture." *Gaste v. Kaiserman*, 863 F.2d 1061, 1066 (2d Cir. 1988).  In addition, actual copying can be established "if the works in question are 'so strikingly similar as to preclude the possibility of independent creation, copying may be proved without a showing of access.'" *Lipton v. Nature Co.*, 71 F.3d 464, 471 (2d Cir. 1995) (quoting *Ferguson v. NBC, Inc.*, 584 F.2d 111, 113 (5th Cir. 1978)).  "To prove that similarities are striking, claimant must demonstrate that such similarities are of a kind that can only be explained by copying, rather than by coincidence, independent creation, or prior common source." *Stratchborneo v. Arc Music Corp.*, 357 F. Supp. 1393, 1403 (S.D.N.Y. 1973); *Clanton v. UMG Recordings, Inc.*, 556 F. Supp. 3d 322, 330 (S.D.N.Y. 2021) (same).

With regard to the second requirement, substantial similarity refers to a "similarity that exists between the protected elements of a work and another work." *Zalewski v. Cicero Builder Dev., Inc.*, 754 F.3d 95, 101 (2d Cir. 2014).  "The standard test for substantial similarity between two items is whether an ordinary observer, unless he set out to detect the disparities, would be disposed to

overlook them, and regard the aesthetic appeal as the same." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.,* 602 F.3d 57, 66 (2d Cir. 2010).  In applying the test, courts ask whether "an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." *Knitwaves, Inc. v. Lollytogs Ltd.,* 71 F.3d 996, 1001 (2d Cir. 1995) (quoting *Malden Mills, Inc. v. Regency Mills, Inc.*, 626 F.2d 1112, 1113 (2d Cir. 1980)).  Courts then "compar[e] the contested design's total concept and overall feel with that of the allegedly infringed work . . . as instructed by our good eyes and common sense." *Peter F. Gaito,* 602 F.3d at 66 (cleaned up).  "[I]n the end, [the] inquiry necessarily focuses on whether the alleged infringer has misappropriated 'the original way in which the author has selected, coordinated, and arranged the elements of his or her work.'" *Id.* (internal quotation marks omitted) (quoting *Knitwaves Inc.*, 71 F.3d at 1004).

The Court can undertake a substantial similarity analysis on a motion to dismiss.  "When a court is called upon to consider whether the works are substantially similar, no discovery or fact-finding is typically necessary, because 'what is required is only a visual comparison of the works.'" *Id.* at 64 (*Folio Impressions, Inc. v. Byer Cal.*, 937 F.2d 759, 766 (2d Cir. 1991)).  "Thus, . . . it is entirely appropriate for the district court to consider the similarity between those works in connection with a motion to dismiss, because the court has before it all that is necessary in order to make such an evaluation." *Id.*

A.     **Substantial Similarity**

1.     **Fleur Dresses**

Considering the images of Design 3886 and of the Fleur dresses, as well as the particular similarities alleged in the complaint, the Court finds that Plaintiff has failed to allege substantial similarity with respect to the Fleur dresses.  The portion of Design 3886 that Plaintiff claims was copied by Defendants comprises three flowers set in a row with three arched elements above them. *See* FAC ¶¶ 20, 21.  Each arched element contains several round fillings. *Id.*   But there are

numerous evident differences between the patterns.  For example, while the flowers in Design 3886 have carefully rounded petals, those in the Fleur dresses have more jagged petals.  And while the flowers in Design 3886 each have four petals, the three flowers in the Fleur dresses appear to have six, five, and four petals.





*Detail of Design 3886*                    *Detail of Fleur dress 48378558*

Design 3886 and the Fleur dresses have a number of other significant differences.  Most notably, while Design 3886 connects its largest rounded element to the three flowers with stems, leaves, and a distinctive H-shaped pattern, the corresponding part of the Fleur dresses contains only a plain background pattern.  As a result, the Fleur dresses appear considerably more sparse than the allegedly infringed portion of Design 3886.  In short, the differences are too many and the similarities too few for an ordinary observer to regard the aesthetic appeal of Design 3886 and the Fleur dresses as the same.  *See Klauber Bros. v. Russell-Newman, Inc.*, No. 11-cv-4985, 2013 WL 1245456, at *8 (S.D.N.Y. Mar. 26, 2013), *aff'd sub nom. Klauber Bros. v. Bon-Ton Stores, Inc.*, 557 F. App'x 77 (2d Cir. 2014) (determining that lace designs were not substantially similar where the

designs featured plant springs of different lengths, differing amounts of leaves, and where one
design featured buds but the other featured blossoms).

### 2.    Nouvelle Fleur Dresses

By contrast, the Nouvelle Fleur dresses contain lace trim bearing an intricate design that is
practically identical to Plaintiff's Design 3886.[6]  As discussed above, "[t]he standard test for
substantial similarity . . . is whether an 'ordinary observer, unless he set out to detect the disparities,
would be disposed to overlook them, and regard [the] aesthetic appeal as the same.'"  *Yurman Design,*
262 F.3d at 111 (quoting *Hamil Am. Inc. v. GFI*, 193 F.3d 92, 100 (2d Cir. 1999)).




*Detail of Design 3886*                       *Detail of Nouvelle Fleur dress 50778935*

The similarities between Design 3886 and the lace trim on, for example, Nouvelle Fleur
dress 50778935, include identical arrangements of flowers and arched elements, whiskering around
the edge that alternates between more pronounced and more subdued threads, identical
arrangements of three petals connecting the first and third flowers to the larger arched element, H-
shaped stitching connecting the second flower to the larger arched element, identical arrangements
of petals connecting the first and third flowers to the second flower, and identical arrangements of

---

[6] The "detail" of Nouvelle Fleur dress 50779214, FAC at 8 (bottom right), appears to mistakenly reproduce a section of
Fleur dress 48378558, FAC at 12 (bottom right).  The design of Nouvelle Fleur dress 50779214 appears to be identical
to that of the other Nouvelle Fleur dresses reproduced in the complaint, so the Court treats it as such.

petals connecting the smaller arched element and the four circular elements below and to the right of that arched element. Indeed, the Court is unable to identify a single obvious difference between the portion of Design 3886 just described and the corresponding portion of Nouvelle Fleur dress 50778935. Thus, the designs are substantially similar. *See Klauber Bros., Inc. v. WW, LLC*, No. 18-CV-4696 (JPO), 2019 WL 2754623, at *5–6 (S.D.N.Y. July 2, 2019) (determining that two lace designs featuring "numerous, prominent shared elements" and "abundant overall similarities" had the same "total concept and overall feel" so as to be substantially similar).

Defendants urge the Court to disregard the similarities between the flowers and arched elements in Design 3886 and the Nouvelle Fleur dresses, arguing that "arched design elements" and "arched elements with round filings" were "commonplace elements found in lace from the Brussels or Belgian 'Bobbin Lace' design style," such that they are in the public sphere and cannot be protected. Mot. at 4–6. Where part of a design is in the public domain and thus "not original, then it is unprotectible." *Boisson*, 273 F.3d at 268. "[A] 'more refined analysis' is required where a plaintiff's work is not 'wholly original,' but rather incorporates elements from the public domain." *Id.* at 272 (citing *Key Publ'ns, Inc. v. Chinatown Today Publ'g Enters., Inc.*, 945 F.2d 509, 514 (2d Cir.1991)). That analysis—under what is called the "more discerning" standard—requires that a court "attempt to extract the unprotectible elements from [its] consideration and ask whether the protectible elements, standing alone, are substantially similar." *Knitwaves*, 71 F.3d at 1002 (emphasis omitted). But "[e]ven under 'more discerning' review . . . the Second Circuit has 'disavowed any notion that [courts] are required to dissect [the works] into their separate components, and compare only those elements which are in themselves copyrightable.'" *Klauber*, 2019 WL 2754623, at *3 (citing *Peter F. Gaito*, 602 F.3d at 66) (internal quotation marks omitted). "Instead the inquiry is more holistic, as courts compare 'the contested design's total concept and overall feel with that of

the allegedly infringed work." *Id.* (quoting *Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127, 133 (2d Cir. 2003)).

Here, assuming without deciding that more discerning review should be applied, the designs still have the same look and feel and thus show substantial similarity.  The two designs contain the same elements in identical arrangements and in the same proportions.  Accordingly, the designs have the same overall look and feel, even under the more discerning standard, which is sufficient to allege substantial similarity.  *See Klauber*, 2019 WL 2754623, at *4–5 (finding that designs were substantially similar under the more discerning standard and noting that the "the leaves [in the challenged design] appear in the same number and directional orientation on each side of the center branches as the leaves [in the plaintiff's design]").

Defendants also argue that the color difference between Design 3886 and the lace trim on the Nouvelle Fleur dresses "is enough to establish a lack of substantial similarity as a matter of law." Mem. at 15.  The Court disagrees.  It is true that color is a highly important element in assessing the visual appeal of fabric generally.  *Klauber*, 2013 WL 1245456, at *8 (collecting cases).  And though "a particular color is not copyrightable, the author's choice in incorporating color with other elements may be copyrighted."  *Boisson,* 273 F.3d at 271.  Indeed, the majority of cases relied upon by Defendants feature challenged designs using similar color schemes and combinations.  *See* Mot. at 14–15; *see also Klauber Bros.*, 2019 WL 2754623, at *5 (commenting on cases in which "[c]ourts generally focus on the similarities in color schemes, i.e., the choice of a specific set of colors.").  And while Defendants point to numerous cases in which designs utilizing similar color schemes were found to be substantially similar, Defendants have not identified any cases in which a court *declined* to find a substantial similarity solely because the designs were different colors.[7]

---

[7] Defendants rely on *Klauber Bros. v. Russell-Newman, Inc.*, where the Court commented that the Plaintiff had not alleged a "common color scheme" before granting Plaintiff's motion to dismiss. 2013 WL 1245456, at *8.  But in addition to that determination, the court there found numerous other differences between Plaintiff's design and the allegedly infringing

Here, the only discernable difference between the Design 3886 and the lace on the Nouvelle Fleur dresses is the choice of color.  Still, it is notable that Design 3886 and the lace on the Nouvelle Fleur dresses are both monochromatic.  *Klauber Bros.*, 2019 WL 2754623, at *5 (finding substantial similarity and commenting that the lace designs at issue, though difference colors, "ha[d] in common that they incorporate a single color of lace, as opposed to depicting various elements in different colors.").  And given the similarity between all of the other elements in Design 3886 and the lace trim on the Nouvelle Fleur dresses—whether in "blush," "violet grey," "fog," "bourdeaux," or "midnight,"—an ordinary observer would view the designs as having the same aesthetic appeal so as to be substantially similar.

Defendants are not successful in arguing that Plaintiff's Design 3886 and the Nouvelle Fleur dresses "differ substantially in their 'total concept and feel'" because "the dresses are floor-length gowns using lace only as a minor trim on the straps and they incorporate colors . . . [and] other elements such as a shirred bodice, cinched waist, and other fabric not [] within the scope of [Design 3886]."  Reply at 7.  To the contrary, an infringing work does not cease to infringe merely because it has been incorporated into a garment that includes other original elements.  *See Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 565 (1985) (commenting that infringement may "not be excused merely because it is insubstantial with respect to the *infringing* work") (emphasis in original). As the Second Circuit has commented

> It has long been settled that no plagiarist can excuse the wrong by showing how much of his work he did not pirate, and this aphorism applies equally to exact reproduction of visual works.  As a result, a would-be appropriator who wishes to test the limits of copyright law gains nothing from "adding on" to what she has precisely reproduced.

*Tufenkian*, 338 F.3d at 132–33 (citations and quotation marks omitted).

---

design.  *Id.*  It is not the case, as it is here, that the only distinguishing factor is the difference in color between the two designs.

It follows that the proper analysis here is whether the allegedly infringed portion of Design 3886 is substantially similar to the allegedly infringing portion of the Nouvelle Fleur dresses. *See, e.g., Klauber Bros., Inc. v. Bon-Ton Stores, Inc.*, 557 F. App'x 77, 79–80 (2d Cir. 2014) (summary order) (comparing allegedly infringed design to lace waistband of allegedly infringing underwear); *Klauber Bros., Inc. v. QVC, Inc.*, 19-cv-09321, 2020 WL 7029088, at *4–*5 (S.D.N.Y. Nov. 30, 2020) (comparing allegedly infringed design to lace trim of allegedly infringing garments).[8]  As discussed above, the lace trim on the Nouvelle Fleur dresses is practically an exact copy of the bottom middle section of Plaintiff's Design 3886.  Accordingly, Plaintiff has sufficiently alleged wrongful copying with respect to the Nouvelle Fleur dresses.

### B.     Actual Copying

Because Plaintiff has plausibly alleged wrongful copying only with respect to the Nouvelle Fleur dresses, the Court need only consider the second requirement—actual copying—with respect to those dresses.  The Court finds that Plaintiff has plausibly alleged that Defendants actually copied Design 3886 when it designed and manufactured the Nouvelle Fleur dresses.  That conclusion rests on the striking similarity between Design 3886 and the lace on the Nouvelle Fleur dresses rather than any allegations of access in the complaint.

### 1.     Striking Similarity

Plaintiff has plausibly alleged that the infringed portion of Design 3886 and the lace trim on the Nouvelle Fleur dresses are "so strikingly similar as to preclude the possibility of independent

---

[8] The Court notes that this part-to-part comparison differs from the "scattershot approach" rejected by the Second Circuit.  *See Williams v. Crichton*, 84 F.3d 581, 590 (2d Cir. 1996).  In the "scattershot approach," a plaintiff attempts to manufacture substantial similarity by "emphasiz[ing] random similarities scattered throughout the works."  *Id.*  Here, Plaintiff argues similarity by showing that a significant, contiguous section of its work appears, virtually unaltered in a contiguous section of the allegedly infringing work.  Such "exact reproduction" cannot hide inside a larger work, regardless of the overall look and feel of that larger work.  *See Tufenkian*, 388 F.3d 127, 132.

creation."  *Lipton*, 71 F.3d at 471 (citation and internal quotation marks omitted).[9]  "To infer actual copying based on the stringent 'striking similarity' test . . . the similarities between the contested works must be 'so identical' as to 'preclude any reasonable possibility of independent creation.'"  *Feuer-Goldstein, Inc. v. Michael Hill Franchise Pty. Ltd.*, No. 16-CV-9987 (PKC), 2019 WL 1382341, at *9



*Detail of Design 3886*



*Detail of Nouvelle Fleur dress 50778935*

(S.D.N.Y. Mar. 27, 2019) (quoting *Webb v. Stallone*, 910 F. Supp. 2d 681, 687 (S.D.N.Y. 2012) (emphasis omitted)).

Considering the images of Design 3886 and of the Nouvelle Fleur dresses, as well as the particular similarities alleged in the complaint, the Court concludes that Design 3886 and the Nouvelle Fleur dresses are so strikingly similar as to preclude the reasonable possibility of independent creation.  As discussed above, the lace trim on the Nouvelle Fleur dresses is practically identical to the allegedly infringed portion of Design 3886.  Any minute differences are more likely to be the result of imperfect copying than intentional modification.[10]

---

[9] As indicated above, the "Nouvelle Fleur dresses" are those alleged to have been manufactured by Urban Outfitters and sold online by BHLDN.

[10] Courts may determine on a motion to dismiss whether a reasonable jury could find striking similarity between the works at issue.  *Wagner v. Littell*, 549 F. App'x 32, 34 (2d Cir. 2014) (summary order) ("[T]he issue [of similarity] can be decided as a matter of law, even at the pleading stage, by examining the four corners of the complaint together with the works themselves . . . .") (quoting *Peter F. Gaito*, 602 F.3d at 63–64)).

The striking similarity between that dress and Design 3886 therefore, at this stage, is sufficient to allege actual copying. *See Lipton*, 71 F.3d at 471 (determining that designs were "strikingly similar" where an allegedly infringing scarf featured idiosyncratic animal-related terms that were identical to terms in the plaintiff's book, and arranged those terms identically to the manner in which they were arranged in that book).

### 2.    Plaintiff's Alternative Arguments for Access

Because the Court has found a striking similarity, it need not consider Plaintiff's alternative allegations regarding access. Nevertheless, the Court notes that those allegations are insufficient. Plaintiff's only specific allegation of access is its allegation that in September 2013, it sent Urban Outfitters two samples of Design 3885—a "sister design" of Design 3886—along with several other unrelated designs. That allegation does nothing to support Plaintiff's claim that Urban Outfitters or the other defendants had access to Design 3886, the only design Plaintiff claims to have been infringed. "Access means that an alleged infringer had a 'reasonable possibility'' . . . of [viewing] the prior work . . . .'" *Jorgensen*, 351 F.3d at 51 (quoting *Gaste v. Kaiserman*, 863 F.2d 1061, 1066 (2d Cir. 1988)). Plaintiff's allegation does not relate to the prior work at issue in this case, and is therefore insufficient to support its claim that Urban Outfitters or the other defendants had access to that prior work.[11]

Plaintiff's boilerplate, conclusory allegations of access in paragraph 25 of the complaint are also insufficient to establish actual copying because they do not contain any specific facts from which the Court can infer access. "In a claim for copyright infringement, 'Rule 8 requires that the particular infringing acts be set out with some specificity.'" *Energy Intel. Grp., Inc. v. Jefferies, LLC*, 101

---

[11] Because the allegation does not relate to the design at issue in this case, the Court need not consider whether Plaintiff would otherwise have met its burden at the pleading stage. The Court does not decide, for instance, whether Plaintiff would have alleged "a nexus between the recipients and the alleged infringers" or whether it would have alleged merely "[b]are corporate receipt" of its work. *Id.* at 53.

F. Supp. 3d 332, 338 (S.D.N.Y. 2015) (quoting *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 36 n.3 (S.D.N.Y. 1992), *aff'd*, 23 F.3d 398 (2d Cir. 1994), *cert. denied*, 513 U.S. 950 (1994)).  Plaintiff alleges the following:

> Defendants, and each of them, had access to the Subject Design including, without limitation, through (a) access to Plaintiff's showroom and/or design library; (b) access to illegally distributed copies of the Subject Design by third-party vendors and/or Doe Defendants, including without limitation international and/or overseas converters and printing mills; (c) access to Plaintiff's strike-offs and samples; and (d) garments manufactured and sold to the public bearing fabric lawfully printed with the Subject Design by Plaintiff for its customers.

FAC ¶ 25.  This allegation is nothing more than a generic list of means by which any infringer might gain access to any fabric design.  As another court in this district noted in dismissing a complaint brought by Plaintiff with substantially identical language, "[t]his assertion is wholly inadequate since it fails to provide any actual facts to allow the Court to infer that any Defendant had access to Plaintiff's designs."  *Klauber Bros., Inc. v. QVC, Inc.*, 2020 WL 7029088, at *9.

And finally, Plaintiff also fails to allege that Design 3886 was so widely disseminated that Defendants would have had access to it.  "Access may be . . . inferred from the fact that a work was widely disseminated . . . ."  *Boisson*, 273 F.3d at 270.  Courts have "consistently recognized widespread dissemination given rise to an inference of access exclusively in cases where the allegedly infringed work has had considerable commercial success or is readily available on the market."  *Silberstein v. Fox Eng. Grp., Inc.*, 424 F. Supp. 2d 616, 627 (S.D.N.Y. 2004) (collecting cases).  Plaintiff alleges that, between 2008 and the filing of the complaint, Plaintiff distributed approximately 150 thousand yards of lace bearing either Design 3886 or one of an unspecified number of "related patterns" to "numerous" apparel companies.  FAC ¶ 15.  That allegation does not establish how much lace bearing Design 3886—as opposed to one of its "related patterns," which are not at issue in this case—was distributed.  Even assuming *arguendo* that Design 3886 accounted for nearly all of those 150 thousand yards, Plaintiff does not allege any facts to support the inference that such a

quantity constitutes widespread dissemination in the relevant market. *See Dress Barn, Inc. v. Klauber Bros., Inc.*, 18cv8085, 2019 WL 1949675, at *5 (S.D.N.Y. Apr. 22, 2019) ("Klauber pleads no facts to demonstrate that the hundreds of thousands of yards of lace it 'sampled or sold' constitute widespread dissemination . . . .").

The complaint also fails to indicate when, where, and to whom the lace was distributed. As other courts have noted in dismissing other complaints brought by Plaintiff, such details are necessary to permit a court to infer that a defendant had a reasonable possibility of encountering the work at issue. *See, e.g., Klauber Bros., Inc. v. QVC, Inc.*, 2020 WL 7029088, at *8 ("Plaintiff's allegation does not provide any detail about how much of the lace was sampled or sold, when it was sampled or sold, or, importantly, to whom it was sampled or sold. Without those details, the Court is unable to infer, to any degree of plausibility, whether Defendants saw or could have seen the protected designs at or around the time its products were made."); *Dress Barn*, 2019 WL 1949675, at *5 (determining Plaintiff had not pleaded access in that case because "Klauber's amended counterclaims assert no facts regarding where and when this lace was distributed."). In sum, the allegations in the complaint do not establish whether and to what extent Design 3886 was commercially successful, readily available, or otherwise likely to be encountered by Defendants. Nevertheless, because Plaintiff has sufficiently alleged a striking similarity, it has sufficiently pleaded actual copying. Accordingly, Plaintiff has adequately pleaded a claim for infringement with respect to the Nouvelle Fleur dresses.

### C.    Vicarious or Contributory Infringement

Plaintiff does not adequately plead vicarious or contributory infringement. "A person 'infringes contributorily by intentionally inducing or encouraging direct infringement, and infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it.'" *Spinelli*, 903 F.3d at 197 (quoting *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913,

930 (2005)).  "Without a showing of a direct copyright infringement, secondary liability cannot be maintained."  *Id.* (citing *Grokster*, 545 U.S. at 930).

With regard to contributory copyright infringement, "[o]nce a direct infringement claim by a third-party is established, a defendant 'may be held liable for contributory copyright infringement if, with knowledge of the infringing activity, it materially contributes to the infringing conduct of' the third party.  *Hartmann v. Amazon.com, Inc.*, No. 20 CIV. 4928 (PAE), 2021 WL 3683510, at *6 (S.D.N.Y. Aug. 19, 2021) (quoting *Arista Recs. LLC v. Lime Grp. LLC*, 784 F. Supp. 2d 398, 432 (S.D.N.Y. 2011)).  "The knowledge required is constructive, such that persons who 'know or have reason to know of the direct infringement' may be liable."  *Id.* (quoting *Arista Records LLC v. Doe 3*, 604 F.3d 110, 118 (2d Cir. 2010)).

A defendant may be vicariously liable for a third party's infringement "if he ha[s] the right and ability to supervise the [third party's] infringing activity and also has a direct financial interest in such activities."  *Gershwin Pub. Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971).  Thus, vicarious liability "does not include an element of knowledge or intent on the part of the vicarious infringer."  *Arista Recs. LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 156 (S.D.N.Y. 2009).  Instead, the plaintiff must have "had the ability to supervise" the infringing activity "and failed to do so."  *Arista Records*, 784 F. Supp. 2d at 435.  And there must have been a "causal relationship" between the infringing activity and a financial benefit reaped by the defendant.  *Id.*

Plaintiff's conclusory allegations are insufficient to plead either contributory or vicarious infringement.  As an initial matter, Plaintiff purports to allege both direct and secondary copyright infringement by all Defendants. *See* FAC ¶¶ 29, 37.  But the amended complaint does not indicate which Defendants are responsible as primary or contributory infringers—the closest that it comes to doing so is mentioning that the infringing dresses were sold online by BHLDN and Anthropologie, and that "RN No. 66170" bore a label "indicating that it was manufactured by Urban Outfitters."

*See id.* ¶ 19.  Plaintiff's vague allegations regarding the roles that the Defendants played in any alleged infringement are insufficient support for its vicarious or contributory infringement claim.

Moreover, Plaintiff's substantive allegations regarding vicarious or contributory infringement are conclusory.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a cause of action.  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557).  Plaintiff's allegations in support of its claim of vicarious or contributory infringement are mere boilerplate:

> Plaintiff is informed and believes and thereon alleges that Defendants knowingly induced, participated in, aided and abetted in and profited from the illegal reproduction and/or subsequent sales of garments featuring the Subject Design by, *inter alia*, directing the manufacture of or selection and sourcing of materials and designs for the Infringing Products or had agreements requiring the manufacture or sourcing of certain materials or designs, with the ability and right to supervise, direct, cancel, or otherwise modify its orders for the manufacture or purchase of the Infringing Products.  Plaintiff is informed and believes and thereon alleges that Defendants had direct oversight or involvement in the sourcing of materials for and manufacture of the Infringing Products and thus knew, induced, caused, or materially contributed to the infringement of Plaintiff's rights as alleged herein.

FAC ¶ 35.  Such a threadbare, conclusory recital of the elements of a claim for vicarious or contributory infringement is insufficient to state that claim.  Other courts in this district came to the same conclusion after considering Plaintiff's similarly thin allegations of contributory or vicarious infringement in prior cases.  *See, e.g., Dress Barn*, 2019 WL 1949675, at *5 ("While Klauber alleges that '[c]ounterdefendants, and each of them, have committed copyright infringement with actual or constructive knowledge of Klauber's rights, and/or in blatant disregard for Klauber's rights,' such a statement is a threadbare recitation of the legal requirement that is inadequate to plausibly allege that Protrend had knowledge of Dress Barn's alleged infringement."); *Klauber Bros., Inc. v. Jenny Yoo Collection, Inc.*, 16 Civ. 9260, 2017 WL 4082483, at *6–7 (S.D.N.Y. July 18, 2017) ("Because the allegations concerning the claim for secondary liability consist of nothing more than 'naked

assertions devoid of further factual enhancement,' the motion to dismiss it is granted.").

Accordingly, Plaintiff's claim for vicarious or contributory infringement is dismissed with respect to

all Defendants.

## IV.    LEAVE TO AMEND

Although Plaintiffs have already amended their complaint once, Dkt. No. 40, the Court

grants Plaintiffs leave to replead the dismissed claims.  *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949

F.2d 42, 48 (2d Cir. 1991) ("It is the usual practice upon granting a motion to dismiss to allow leave

to replead."); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when

justice so requires.").  While leave may be denied "for good reason, including futility, bad faith,

undue delay, or undue prejudice to the opposing party[,]" those circumstances do not apply in this

case with respect to the majority of the dismissed claims.  *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d

493, 505 (2d Cir. 2014) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir.

2007)).  Any amended complaint must be filed within fourteen days after the entry of this opinion.

## V.    CONCLUSION

As discussed above, Defendant's motion to dismiss Plaintiff's claim for copyright

infringement is granted with respect to the Fleur dresses, but denied with respect to the Nouvelle

Fleur dresses.  Furthermore, Defendants' motion to dismiss is granted with respect to Plaintiff's

claim for vicarious or contributory copyright infringement.

The Clerk of Court is directed to terminate the motions pending at Dkt. Nos. 50 and 52.

SO ORDERED.

Dated:  May 14 2022
New York, New York

_____
GREGORY H. WOODS
United States District Judge