```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
KLAUBER BROTHERS, INC.                          :
                                                :
                          Plaintiff,            :
                                                :
              -against-                         :
                                                :
URBN US RETAIL LLC,                             :
ANTHROPOLOGIE, INC.,                            :
BHLDN.COM LLC,                                  :
URBAN OUTFITTERS, INC., and                     :
DOES 1 through 10,                              :
                                                :
                          Defendants.           :
                                                :
-----------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/8/2022

1:21-cv-4526-GHW

MEMORANDUM OPINION
AND ORDER

GREGORY H. WOODS, United States District Judge:

## I.  INTRODUCTION

Plaintiff Klauber Brothers, Inc. ("Plaintiff") alleges that Defendants Urban Outfitters, Inc., Anthropologie, Inc., BHLD.COM LLC, and URBN US Retail LLC (together "Defendants") created, manufactured, and sold two dress styles—the "Fleur" and "Nouvelle Fleur" dresses—with lace straps bearing patterns copied from one of Plaintiff's lace designs. Based on that alleged conduct, Plaintiff filed this lawsuit, asserting that Defendants violated the Copyright Act of 1976, Title 17 U.S.C., § 101 *et seq.*

In a prior opinion—*Klauber Bros., Inc. v. URBN US Retail LLC*, No. 1:21-cv-4526-GHW, 2022 WL 1539905 (S.D.N.Y. May 14, 2022) ("*Klauber I*")—the Court held that the Nouvelle Fleur dress was substantially similar to the Plaintiff's copyrighted work, but that Plaintiff had not adequately pleaded its claim with respect to the Fleur dress. Plaintiff amended its complaint in a threadbare manner in an effort to revive its claims regarding the Fleur dress. Those modest

alterations do not cure the deficiencies identified by the Court in *Klauber I*. Accordingly, Defendants' motion to dismiss is GRANTED.

## I. BACKGOUND

### A.     Facts[1]

Plaintiff is a lace company based in New York. Second Amended Compl. ("SAC") ¶¶ 4–5. Among Plaintiff's lace designs are two designs that Plaintiff calls Design 3885 and Design 3886. *Id.* ¶¶ 14, 16. Plaintiff owns a copyright registration covering Design 3886, but does not have a copyright in Design 3885. *See id.* ¶¶ 14–16.

*Design 3885*[2]     *Design 3886*




Beginning in 2008, Plaintiff "sampled and sold over 150,052 yards of lace bearing [Design 3886] and its related patterns . . . to numerous parties in the retail and apparel industries." *Id.* ¶ 16. In or around September 2013, Plaintiff sent Urban Outfitters samples of "at least 87" of its designs.

---

[1] Unless otherwise noted, the facts are taken from the second amended complaint and are accepted as true for the purposes of this motion. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
[2] All images in this opinion are copied from Plaintiff's second amended complaint.

*Id.* ¶ 18. Those samples included "two swatches" of Design 3885, but none of Design 3886. *Id.*; *see also* Notice of Errata, Dkt. 78 Ex. 1, at 3.




*Nouvelle Fleur dress 50778935*       *Fleur dress 48378558*

BHLDN sold six items online (style numbers 50779214, 50778935, 50779495, 50778934, 50779354, and 50779073; collectively, the "Nouvelle Fleur dresses") that Plaintiff alleges "incorporat[ed] fabric that bears artwork identical to or substantially similar to [Design 3886]." SAC ¶ 20. Likewise, Anthropologie sold six items online (style numbers 48378558, 45101847, 35734615, 36526663, 33892415, and 36081792; collectively, the "Fleur dresses") that allegedly bore designs similar to Design 3886. *Id.*

The factual recitations, and analysis, set forth in this opinion are largely identical to those contained in *Klauber I*. That is because the amended complaint that is the subject of this opinion is largely identical to the prior complaint. In its amended complaint, Plaintiff offers few new

3

allegations in response to the Court's prior opinion. The complaint now includes different, rotated images of the works. But they are merely new images of the same fabric considered by the Court in its previous opinion. In its amended complaint, Plaintiff also offers its opinion regarding at least part of the differences between the lace used in the Fleur dress and Plaintiff's protected lace: "Plaintiff is informed and believes . . . that any differences on the lace of the Infringing Products results *in part* from Defendants using cruder, lower-quality techniques and machinery . . . ." *Id.* ¶ 24.

The only other non-conclusory allegation offered by Plaintiff's amended complaint parallels one of its prior allegations on the issue of access. Plaintiff alleges that Urban Outfitters "knew of Plaintiff's copyrights in the Subject Design because Urban Outfitters received a sample of Design 3885, which contains elements of the Subject Design protected under copyright law." *Id.* ¶ 37.

### B.    Procedural History

Plaintiff filed the initial complaint in this action on May 19, 2021. *See* Dkt. No. 1. Defendants moved to dismiss the initial complaint on August 13, 2021. *See* Dkt. No. 30. Rather than oppose that motion, Plaintiff filed an amended complaint on September 7, 2021. *See* First Amended Compl., Dkt. No. 40.

On March 14, 2022, the Court granted in part and denied in part Defendant's motion to dismiss the first amended complaint. *See Klauber I*. In *Klauber I*, the Court concluded that Plaintiff had not adequately pleaded that Defendants had access to its protected work. However, the Court found that the lace used in the Nouvelle Fleur dress was so strikingly similar to Plaintiff's protected work that Plaintiff's claim could proceed with respect to that product. The Court granted Plaintiff leave to amend the complaint. And Plaintiff took advantage of that opportunity, filing the amended complaint that is the subject of this motion on March 27, 2022. *See* SAC. That amended complaint is the operative complaint in this action.

Defendants filed a motion to dismiss the second amended complaint under Rule 12(b)(6) and a memorandum of law in support of that motion on June 28, 2022. *See* Mot. to Dismiss, Dkt. No. 73; Defs.' Mem. in Supp., Dkt. No. 74. Defendants' motion repeats many of the same arguments presented in the original motion to dismiss—arguing that given the limited additional allegations in the amended complaint, that the Court should not reach a different conclusion in response to the renewed motion. Plaintiff filed a memorandum of law in opposition to the motion to dismiss on July 18, 2022. *See* Pl.'s Opp'n ("Opp'n"), Dkt. No. 76. Defendants filed a reply in support of the motion to dismiss on July 25, 2022. *See* Defs.' Reply, Dkt. No. 25.

## II. LEGAL STANDARD

A complaint need only contain "a short and plain statement . . . showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a claim that does not meet this pleading standard for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). On a motion filed under Rule 12(b)(6), the court accepts as true the facts alleged in the complaint and draws all reasonable inferences in the plaintiff's favor. *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam). But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are inadequate. *Iqbal*, 556 U.S. at 678 (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). And "[t]he tenet that a court must accept as true" a complaint's factual allegations does not apply "to legal conclusions." *Iqbal*, 556 U.S. at 678 (alterations omitted).

To survive dismissal, a complaint must allege sufficient facts to state a plausible claim. *Twombly*, 550 U.S. at 570. A claim is plausible when the plaintiff pleads facts to support the reasonable inference that the defendant has acted unlawfully. *Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 556). The plaintiff's claim must be more than merely "speculative." *Twombly*, 550 U.S. at

545.  And a reviewing court must "draw on its judicial experience and common sense" to determine plausibility.  *Iqbal*, 556 U.S. at 679 (citation omitted).

On a motion to dismiss, a court must generally "limit itself to the facts stated in the complaint." *Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167, 192 (2d Cir. 2006) (quoting *Hayden v. County of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999)).  "Generally, [courts] do not look beyond 'facts stated on the face of the complaint, . . . documents appended to the complaint or incorporated in the complaint by reference, and . . . matters of which judicial notice may be taken.'"  *Goel v. Bunge, Ltd.,* 820 F.3d 554, 559 (2d Cir. 2016) (quoting *Concord Assocs., L.P. v. Entm't Props. Tr.*, 817 F.3d 46, 51 n. 2 (2d Cir. 2016)).  A court may consider "any 'written instrument' . . . attached to [the complaint] as 'an exhibit' or . . . incorporated in it by reference." *Lynch v. City of New York*, 952 F.3d 67, 79 (2d Cir. 2020) (quoting Fed. R. Civ. P. 10(c) (other citations omitted)).  A court may also consider a document "solely relie[d]" on by the plaintiff if it "is integral to the complaint." *Id.* (quotation and brackets omitted).  A document is "integral to the complaint" if the complaint "relies heavily" on the document's "terms and effect." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016).

### III. DISCUSSION

#### A. Copyright Infringement

Plaintiff has not adequately pleaded that the protected elements of Design 3886 are substantially similar to the lace on the Fleur dresses.  "To state a claim for copyright infringement, a plaintiff must allege 'both (1) ownership of a valid copyright and (2) infringement of the copyright by the defendant.'"  *Spinelli v. Nat'l Football League*, 903 F.3d 185, 197 (2d Cir. 2018) (quoting *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 109 (2d Cir. 2001)).  There is "a statutory presumption" that a copyright is valid when it has been registered in the United States Register of Copyright.  *Yurman*, 262 F.3d at 109; *see also* 17 U.S.C. § 410(c) ("In any judicial proceedings the certificate of a

6

registration made before or within five years after first publication of the work shall constitute *prima facie* evidence of the validity of the copyright . . . ."). In this case, Defendants do not dispute Plaintiff's allegation that it owns a valid copyright registration for Design 3886.

"To satisfy the second element, a plaintiff 'must demonstrate that: (1) the defendant has actually copied the plaintiff's work; *and* (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's [work].'" *Abdin v. CBS Broad. Inc.*, 971 F.3d 57, 66 (2d Cir. 2020) (emphasis in original) (quoting *Yurman*, 262 F.3d at 110).

For the first requirement, "[a]ctual copying may be established by direct or indirect evidence." *Boisson v. Banian, Ltd.*, 273 F.3d 262, 267 (2d Cir. 2001). "Because direct evidence of copying is seldom available, a plaintiff may establish copying circumstantially 'by demonstrating that the person who composed the defendant's work had access to the copyrighted material' and that there are similarities between the two works that are 'probative of copying.'" *Jorgensen v. Epic/Sony Recs.*, 351 F.3d 46, 51 (2d Cir. 2003) (first quoting *Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1249 (11th Cir. 1999); and then quoting *Repp v. Webber*, 132 F.3d 882, 889 (2d Cir. 1997)). "Access must be more than a bare possibility and may not be inferred through speculation or conjecture." *Gaste v. Kaiserman*, 863 F.2d 1061, 1066 (2d Cir. 1988). In addition, actual copying can be established "if the works in question are 'so strikingly similar as to preclude the possibility of independent creation, copying may be proved without a showing of access.'" *Lipton v. Nature Co.*, 71 F.3d 464, 471 (2d Cir. 1995) (quoting *Ferguson v. NBC, Inc.*, 584 F.2d 111, 113 (5th Cir. 1978)). "To prove that similarities are striking, claimant must demonstrate that such similarities are of a kind that can only be explained by copying, rather than by coincidence, independent creation, or prior common source." *Stratchborneo v. Arc Music Corp.*, 357 F. Supp. 1393, 1403 (S.D.N.Y. 1973); *Clanton v. UMG Recordings, Inc.*, 556 F. Supp. 3d 322, 330 (S.D.N.Y. 2021) (same).

With regard to the second requirement, substantial similarity refers to a "similarity that exists between the protected elements of a work and another work." *Zalewski v. Cicero Builder Dev., Inc.*, 754 F.3d 95, 101 (2d Cir. 2014). "The standard test for substantial similarity between two items is whether an ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard the aesthetic appeal as the same." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.,* 602 F.3d 57, 66 (2d Cir. 2010). In applying the test, courts ask whether "an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." *Knitwaves, Inc. v. Lollytogs Ltd.,* 71 F.3d 996, 1001 (2d Cir. 1995) (quoting *Malden Mills, Inc. v. Regency Mills, Inc.*, 626 F.2d 1112, 1113 (2d Cir. 1980)). Courts then "compar[e] the contested design's total concept and overall feel with that of the allegedly infringed work . . . as instructed by our good eyes and common sense." *Peter F. Gaito,* 602 F.3d at 66 (cleaned up). "[I]n the end, [the] inquiry necessarily focuses on whether the alleged infringer has misappropriated 'the original way in which the author has selected, coordinated, and arranged the elements of his or her work.'" *Id.* (internal quotation marks omitted) (quoting *Knitwaves Inc.*, 71 F.3d at 1004).

The Court can undertake a substantial similarity analysis on a motion to dismiss. "When a court is called upon to consider whether the works are substantially similar, no discovery or fact-finding is typically necessary, because 'what is required is only a visual comparison of the works.'" *Id.* at 64 (*Folio Impressions, Inc. v. Byer Cal.*, 937 F.2d 759, 766 (2d Cir. 1991)). "Thus, . . . it is entirely appropriate for the district court to consider the similarity between those works in connection with a motion to dismiss, because the court has before it all that is necessary in order to make such an evaluation." *Id.*

1.  **Substantial Similarity**

Considering the images of Design 3886 and of the Fleur dresses, as well as the particular similarities alleged in the complaint, the Court finds that Plaintiff has failed to allege substantial

8

similarity between Design 3886 and the Fleur dresses. The Court reached this same conclusion based on a close examination of the images contained in the prior version of the complaint. The new images of the same products in the amended complaint do not change the Court's view.

The portion of Design 3886 that Plaintiff claims was copied by Defendants comprises three flowers set in a row with three arched elements above them. *See* SAC ¶¶ 21, 22. Each arched element contains several round fillings. *Id.* But there are numerous evident differences between the patterns. For example, while the flowers in Design 3886 have carefully rounded petals, those in the Fleur dresses have more jagged petals. And while the flowers in Design 3886 each have four petals, the three flowers in the Fleur dresses appear to have six, five, and four petals.




*Detail of Design 3886*            *Detail of Fleur dress 48378558*

Design 3886 and the Fleur dresses have a number of other significant differences. Most notably, while Design 3886 connects its largest rounded element to the three flowers with stems, leaves, and a distinctive H-shaped pattern, the corresponding part of the Fleur dresses contains only a plain background pattern. As a result, the Fleur dresses appear considerably sparser than the allegedly infringed portion of Design 3886. In short, the differences are too many and the similarities too few for an ordinary observer to regard the aesthetic appeal of Design 3886 and the Fleur dresses as the same. *See Klauber Bros. v. Russell-Newman, Inc.*, No. 11-cv-4985, 2013 WL

1245456, at *8 (S.D.N.Y. Mar. 26, 2013), *aff'd sub nom. Klauber Bros. v. Bon-Ton Stores, Inc.*, 557 F. App'x 77 (2d Cir. 2014) (determining that lace designs were not substantially similar where the designs featured plant springs of different lengths, differing amounts of leaves, and where one design featured buds but the other featured blossoms).

Plaintiff's new allegation that "any differences on the lace of the Infringing Products results *in part* from Defendants using cruder, lower-quality techniques and machinery . . . ." does not change the analysis. SAC ¶ 24 (emphasis added). It may be, as Plaintiff asserts in the complaint, that differences result *in part* from differences in the machinery used to manufacture the lace. But those are not the material differences—the differences that have led the Court to conclude that the lace is not substantially different are elements of the design itself, as described above. While inferior techniques and machinery could account in part for some differences in detail, it does not explain the absence or presence of design elements (such as the H-shaped pattern) that characterize the distinctive look and feel of Design 3886. *C.f. L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 851 (9th Cir. 2012), *as amended on denial of reh'g and reh'g en banc (June 13, 2012)* (reasoning that a rational jury could credit Plaintiff's assertion that Defendant's "less detailed" "flowers, stems, and leaves" were due to "cruder, lower-quality" manufacturing techniques) (internal quotation marks omitted). "'Good eyes and common sense may be as useful as deep study of reported and unreported cases, which themselves are tied to highly particularized facts.'" *Soptra Fabrics Corp. v. Stafford Knitting Mills, Inc.*, 490 F.2d 1092, 1093 (2d Cir. 1974) (quoting *Couleur Int'l Ltd. v. Opulent Fabrics Inc.*, 330 F. Supp. 152, 153 (S.D.N.Y. 1971)). Here, a visual comparison of the works reveals evident differences in total concept and overall feel that are not explained by lower quality manufacturing. Accordingly, Plaintiff has failed to adequately allege that Design 3886 and the lace on the Fleur dresses are substantially similar.

### 2. Actual Copying

Since Plaintiff has failed to allege that Defendants' Fleur dresses are sufficiently similar to Design 3886, the Court need not consider whether Plaintiff has adequately pleaded that Defendants copied the work. Nevertheless, the Court takes up that issue briefly here: the limited additional allegation in the amended complaint does not cure the deficiencies identified in the Court's prior opinion.

In failing to allege substantial similarity, it follows that Plaintiff is unable to allege that the "works in question are 'so strikingly similar as to preclude the possibility of independent creation.'" *Lipton v. Nature Co.*, 71 F.3d 464, 471 (2d Cir. 1995) (quoting *Ferguson v. NBC, Inc.*, 584 F.2d 111, 113 (5th Cir. 1978)). Plaintiff's alternative allegations of access are likewise insufficient to demonstrate "that the person who composed the defendant's work had access to the copyrighted material' and that there are similarities between the two works that are 'probative of copying.'" *Jorgensen v. Epic/Sony Recs.*, 351 F.3d 46, 51 (2d Cir. 2003) (first quoting *Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1249 (11th Cir. 1999); and then quoting *Repp v. Webber*, 132 F.3d 882, 889 (2d Cir. 1997)).

Plaintiff's only specific allegation of access remains its allegation that in September 2013, it sent Urban Outfitters two samples of Design 3885—a "sister design" of Design 3886—along with several other unrelated designs. *See* SAC ¶¶ 18, 27. Plaintiff alleges that Design 3885 features "the same design elements and motifs as [Design 3886]." *Id.* ¶ 16. However, these allegations do not support Plaintiff's claim that Urban Outfitters or the other defendants had access to Design 3886, the only design Plaintiff claims to have been infringed. "Access means that an alleged infringer had a 'reasonable possibility' . . . of [viewing] the prior work . . . .'" *Jorgensen*, 351 F.3d at 51 (quoting *Gaste v. Kaiserman*, 863 F.2d 1061, 1066 (2d Cir. 1988)). Plaintiff's allegation does not relate to the prior work at issue in this case, and is therefore insufficient to support its claim that Urban Outfitters or the other defendants had access to Design 3886.

11

Plaintiff's reassertion of boilerplate, conclusory allegations of access in paragraph 27 of the complaint are also insufficient to establish actual copying because they do not contain any specific facts from which the Court can infer access. "In a claim for copyright infringement, 'Rule 8 requires that the particular infringing acts be set out with some specificity.'" *Energy Intel. Grp., Inc. v. Jefferies, LLC*, 101 F. Supp. 3d 332, 338 (S.D.N.Y. 2015) (quoting *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 36 n.3 (S.D.N.Y. 1992), *aff'd*, 23 F.3d 398 (2d Cir. 1994), *cert. denied*, 513 U.S. 950 (1994)). Instead, Plaintiff again alleges the following:

> Defendants, and each of them, had access to the Subject Design including, without limitation, through (a) access to Plaintiff's showroom and/or design library; (b) access to illegally distributed copies of the Subject Design by third-party vendors and/or Doe Defendants, including without limitation international and/or overseas converters and printing mills; (c) access to Plaintiff's strike-offs and samples; and (d) garments manufactured and sold to the public bearing fabric lawfully printed with the Subject Design by Plaintiff for its customers.

SAC ¶ 27. This allegation is nothing more than a generic list of means by which any infringer might gain access to any fabric design. As another court in this district noted in dismissing a complaint brought by Plaintiff with substantially identical language, "[t]his assertion is wholly inadequate since it fails to provide any actual facts to allow the Court to infer that any Defendant had access to Plaintiff's designs." *Klauber Bros., Inc. v. QVC, Inc.*, 2020 WL 7029088, at *9.

Finally, while Plaintiff properly notes that widespread dissemination may sometimes give rise to an inference of access, Plaintiff fails to allege that Design 3886 was so widely disseminated that Defendants would have had access to it. "Access may be . . . inferred from the fact that a work was widely disseminated . . . ." *Boisson*, 273 F.3d at 270. Courts have "consistently recognized widespread dissemination giving rise to an inference of access exclusively in cases where the allegedly infringed work has had considerable commercial success or is readily available on the market." *Silberstein v. Fox Eng. Grp., Inc.*, 424 F. Supp. 2d 616, 627 (S.D.N.Y. 2004) (collecting cases). Plaintiff alleges that, between 2008 and the filing of the complaint, Plaintiff distributed

12

approximately 150 thousand yards of lace bearing either Design 3886 or one of an unspecified number of "related patterns" to "numerous" apparel companies. SAC ¶ 16; *see also* Opp'n at 6. Plaintiff argues that "this high volume of sampling and sales in the same fashion market as Defendants is sufficient alone to plead access." Opp'n at 6. To support this argument, Plaintiff cites only *Silberstein v. Fox Eng. Grp., Inc.*, and Plaintiff baldly misstates the decision. *Id.* at 6–7.[3] As actually written, as contrasted with Plaintiff's mischaracterization of the decision, *Silberstein* runs contrary to Plaintiff's argument. That is because Plaintiff, perhaps not unsurprisingly, has not been able to allege that the "allegedly infringed work has had considerable commercial success or is readily available on the market." *Silberstein*, 424 F. Supp. 2d at 627 (emphasis added); Opp'n at 6. Therefore, the exclusive condition described in *Silberstein* does not apply.

Moreover, Plaintiff's allegation in paragraph 16 does not establish how much lace bearing Design 3886—as opposed to one of its "related patterns," which are not at issue in this case—was distributed. Even assuming *arguendo* that Design 3886 accounted for nearly all of those 150 thousand yards, Plaintiff does not allege any facts to support the inference that such a quantity constitutes widespread dissemination in the relevant market. *See Dress Barn, Inc. v. Klauber Bros, Inc.*, 18cv8085, 2019 WL 1949675, at *5 (S.D.N.Y. Apr. 22, 2019) ("Klauber pleads no facts to demonstrate that the hundreds of thousands of yards of lace it 'sampled or sold' constitute widespread dissemination . . . .").

---

[3] In *Silberstein*, Judge Holwell wrote the following: "This court has consistently recognized widespread dissemination giving rise to an inference of access *exclusively* in cases where the allegedly infringed work has had considerable commercial success or is readily available on the market." *Silberstein v. Fox Ent. Grp., Inc.*, 424 F. Supp. 2d 616, 627 (S.D.N.Y. 2004), *aff'd sub nom. Silberstein v. John Does 1-10*, 242 F. App'x 720 (2d Cir. 2007) (emphasis added). Plaintiffs omit the word "exclusively" from their otherwise precise quotation of this sentence, thereby substantially changing its meaning in a way that can only be described as misleading. Opp'n at 6-7 ("Indeed, courts in this District 'consistently recognize[] widespread dissemination giving rise to an inference of access in cases where the allegedly infringed work has had considerable commercial success or is readily available on the market.'") (purporting to quote *Silberstein*, 424 F. Supp. 2d at 627).

The complaint also continues to fail to indicate when, where, and to whom the lace was distributed. As other courts have noted in dismissing other cases brought by Plaintiff, such details are necessary to permit a court to infer that a defendant had a reasonable possibility of encountering the work at issue. *See, e.g., Klauber Bros., Inc. v. QVC, Inc.*, 2020 WL 7029088, at *8 ("Plaintiff's allegation does not provide any detail about how much of the lace was sampled or sold, when it was sampled or sold, or, importantly, to whom it was sampled or sold. Without those details, the Court is unable to infer, to any degree of plausibility, whether Defendants saw or could have seen the protected designs at or around the time its products were made."); *Dress Barn*, 2019 WL 1949675, at *5 (determining Plaintiff had not pleaded access in that case because "Klauber's amended counterclaims assert no facts regarding where and when this lace was distributed."). In sum, the allegations in the complaint do not establish whether and to what extent Design 3886 was commercially successful, readily available, or otherwise likely to be encountered by Defendants.

Accordingly, since Plaintiff has failed to allege actual copying and substantial similarity, Plaintiff has not adequately alleged a claim for copyright infringement as to the Fleur dresses. As such, Plaintiff's allegations of copyright infringement do not "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

### B.   Vicarious or Contributory Infringement

Plaintiff does not adequately plead vicarious or contributory infringement with respect to either dress design. "A person 'infringes contributorily by intentionally inducing or encouraging direct infringement, and infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it.'" *Spinelli*, 903 F.3d at 197 (quoting *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005)). "Without a showing of a direct copyright infringement, secondary liability cannot be maintained." *Id.* (citing *Grokster*, 545 U.S. at 930).

With regard to contributory copyright infringement, "[o]nce a direct infringement claim by a third-party is established, a defendant 'may be held liable for contributory copyright infringement if, with knowledge of the infringing activity, it materially contributes to the infringing conduct of' the third party." *Hartmann v. Amazon.com, Inc.*, No. 20 CIV. 4928 (PAE), 2021 WL 3683510, at *6 (S.D.N.Y. Aug. 19, 2021) (quoting *Arista Recs. LLC v. Lime Grp. LLC*, 784 F. Supp. 2d 398, 432 (S.D.N.Y. 2011)). "The knowledge required is constructive, such that persons who 'know or have reason to know of the direct infringement' may be liable." *Id.* (quoting *Arista Records LLC v. Doe 3*, 604 F.3d 110, 118 (2d Cir. 2010)).

A defendant may be vicariously liable for a third party's infringement "if he ha[s] the right and ability to supervise the [third party's] infringing activity and also has a direct financial interest in such activities." *Gershwin Pub. Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971). Thus, vicarious liability "does not include an element of knowledge or intent on the part of the vicarious infringer." *Arista Recs. LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 156 (S.D.N.Y. 2009). Instead, the plaintiff must have "had the ability to supervise" the infringing activity "and failed to do so." *Arista Records*, 784 F. Supp. 2d at 435. And there must have been a "causal relationship" between the infringing activity and a financial benefit reaped by the defendant. *Id.*

Plaintiff's conclusory allegations are insufficient to plead either contributory or vicarious infringement. As an initial matter, Plaintiff purports to allege both direct and secondary copyright infringement by all Defendants. *See* SAC ¶¶ 31, 39. But the second amended complaint still does not indicate which Defendants are responsible as primary or contributory infringers—the closest that it comes to doing so is mentioning that the infringing dresses were sold online by BHLDN and Anthropologie, and that "RN No. 66170" bore a label "indicating that it was manufactured by Urban Outfitters." *Id.* ¶ 20. Plaintiff's effort to cure the pleading deficiencies identified in the Court's prior opinion fail, because Plaintiff has not presented new well-pleaded facts. Instead, the

15

meager additions to the complaint are conclusory. *See, e.g., id.* ¶ 37 (alleging that "Urban Outfitters intentionally induced or encouraged the infringement alleged herein, by manufacturing the Infringing Products"); *and see id.* ¶ 39 (alleging that Urban Outfitters "has the ability to supervise" the infringing activity). Plaintiff's vague allegations regarding the roles that the Defendants played in any alleged infringement are insufficient support for its vicarious or contributory infringement claim.

Moreover, Plaintiff's substantive allegations regarding vicarious or contributory infringement are conclusory. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a cause of action. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Plaintiff's allegations in support of its claim of vicarious or contributory infringement are, as the Court previously identified, mere boilerplate:

> Plaintiff is informed and believes and thereon alleges that Defendants knowingly induced, participated in, aided and abetted in and profited from the illegal reproduction and/or subsequent sales of garments featuring the Subject Design by, *inter alia*, directing the manufacture of or selection and sourcing of materials and designs for the Infringing Products or had agreements requiring the manufacture or sourcing of certain materials or designs, with the ability and right to supervise, direct, cancel, or otherwise modify its orders for the manufacture or purchase of the Infringing Products. Plaintiff is informed and believes and thereon alleges that Defendants had direct oversight or involvement in the sourcing of materials for and manufacture of the Infringing Products and thus knew, induced, caused, or materially contributed to the infringement of Plaintiff's rights as alleged herein.

SAC ¶ 37. And Plaintiff's new allegations—that Urban Outfitters had "the ability to supervise" and "intentionally induced or encouraged the infringement alleged herein"—are similarly conclusory recitals of the elements of the claim. *Id.* ¶¶ 39, 37. They are, therefore, insufficient to state a claim. Other courts in this district have reached the same conclusion after considering Plaintiff's similarly thin allegations of contributory or vicarious infringement. *See, e.g.*, *Dress Barn*, 2019 WL 1949675, at *5 ("While Klauber alleges that '[c]ounterdefendants, and each of them, have committed copyright

16

infringement with actual or constructive knowledge of Klauber's rights, and/or in blatant disregard for Klauber's rights,' such a statement is a threadbare recitation of the legal requirement that is inadequate to plausibly allege that Protrend had knowledge of Dress Barn's alleged infringement."); *Klauber Bros., Inc. v. Jenny Yoo Collection, Inc.*, 16 Civ. 9260, 2017 WL 4082483, at *6–7 (S.D.N.Y. July 18, 2017) ("Because the allegations concerning the claim for secondary liability consist of nothing more than 'naked assertions devoid of further factual enhancement,' the motion to dismiss it is granted."). Accordingly, Plaintiff's claim for vicarious or contributory infringement is dismissed with respect to all Defendants.

## IV. LEAVE TO AMEND

Defendants' motion to dismiss is granted without leave to amend. "The court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). However, leave may be denied "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)). "A plaintiff need not be given leave to amend if it fails to specify either to the district court or to the court of appeals how amendment would cure the pleading deficiencies in its complaint." *TechnoMarine SA*, 758 F.3d at 505. Here, Plaintiff has already amended the complaint twice. Its second round of amendments were threadbare. Plaintiff has not attempted to specify how it would cure its pleading deficiencies were it granted yet another opportunity to amend the complaint. Accordingly, since Plaintiff has shown itself to be "unable to demonstrate that [it] would be able to amend [its] complaint in a manner which would survive dismissal," the Court denies Plaintiff leave to amend. *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999).

## V. CONCLUSION

Defendants' motion to dismiss Plaintiff's claim for copyright infringement is granted with prejudice with respect to the Fleur dresses. Furthermore, Defendants' motion to dismiss is granted with prejudice with respect to Plaintiff's claim for vicarious or contributory copyright infringement.

The Clerk of Court is directed to terminate the motion pending at Dkt. No. 73.

SO ORDERED.

Dated: February 8, 2023  
New York, New York

_____  
GREGORY H. WOODS  
United States District Judge